Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 372 | **DATE** | 1/17/03 |
| **CASE TITLE** | Manning vs. Dye | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____ .
(3) ☐ Answer brief to motion due_____ . Reply to answer brief due_____ .
(4) ☐ Ruling/Hearing on _____ set for _____ at _____ .
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____ .
(7) ☐ Trial[set for/re-set for] on _____ at _____ .
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____ .
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendants' motion for summary judgment (18-1, 19-1). Plaintiff's motion to stay the summary judgment (23-1) is denied as moot. The United States' motions to substitute defendant (17-1, 20-1) are denied as moot in light of plaintiff's dismissal and refiling of his FTCA claim. Defendants Buchan and Miller are directed to answer plaintiffs' amended complaint within seven days of this order. The case remains set for a status hearing on 7/31/03 at 9:30 a.m., at which time the Court will set a final discovery cutoff date.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JAN 2 1 2003 | |
| | Notified counsel by telephone. | | date docketed | 33 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | OR | courtroom deputy's initials | 03 JAN 20 PM 2:54 | date mailed notice |
| | | | Date/time received in Central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVEN MANNING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 02 C 372 |
| | ) |
| THOMAS DYE, ROBERT BUCHAN, | ) |
| GARY MILLER, UNITED STATES | ) |
| OF AMERICA, CITY OF CHICAGO, | ) |
| and LOUIS RABBIT, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Plaintiff Steve Manning, a former Chicago police officer, claims that defendants Robert Buchan and Gary Miller, both of whom are FBI agents, Chicago police detective Louis Rabbit, and Thomas Dye, a jailhouse informant, framed him for a murder that he did not commit. They did this, he says, following Manning's termination of his relationship as an informant for the FBI squad to which Buchan and Miller belonged. Manning alleges that in retaliation, the FBI agents tried to frame him for a 1984 double kidnapping, the 1985 murder of Chuckie English, and the 1990 murder of James Pellegrino.

According to Manning, while interviewing a witness to the kidnapping, Buchan displayed a suggestive photo array to induce the witness to identify Manning as the perpetrator. After arresting him in August 1999 based on the improperly-induced identification, Manning alleges, Buchan and Miller arranged for him to be put in a cell with Dye, a known jailhouse informant

with a propensity to lie and a record of giving false information. They told Dye about the crimes that they were trying to tie to Manning, intending that Dye would concoct a phony confession by Manning to one or more of these crimes. The agents later prepared witness interview memoranda stating that Dye had advised them that Manning had confessed to all three crimes. This, Manning says, was untrue: not only had he not confessed to Dye, but (he says) Dye had not actually told the agents what they attributed to him.

Manning alleges that the agents got permission to outfit Dye with a device to record his conversations with Manning. Dye engaged Manning in conversation on August 24, 1990; Miller's later report of this event stated that Due told the agents that Manning had confessed to the murder of Pellegrino. The tape recording, however, contained no such admissions by Manning. Miller later reported that on September 24, 1990, Manning again confessed to Dye both the kidnapping and murder, but the recording device malfunctioned and did not record the purported confession. Neither of these confessions had actually occurred, Manning alleges, and the agents knew it when they prepared their reports.

According to Manning, the agents coached Dye to fabricate a story explaining why the confession did not appear on the August 24 tape; at their importuning, Dye falsely reported that Manning had pushed him, the microphone was blocked for two seconds of the hours-long tape, and Manning had confessed during that brief gap. Dye repeated this story before a federal grand jury, which nonetheless declined to indict Manning. The agents then turned to the local authorities, and in February 1992 a Cook County grand jury indicted Manning for the Pellegrino murder. Neither Miller nor Buchan testified before that grand jury. Local prosecutors instead called defendant Louis Rabbit, a Chicago police detective, who first told the prosecutors and then

2

testified to the grand jury about what Miller, Buchan, and Dye had told him of Manning's purported confessions. Manning contends, however, that Rabbit, too, knew the confessions were fabricated but failed to advise the prosecutors.

Manning was tried in October 1993 for the Pellegrino murder. He alleges that Dye falsely testified that Manning had confessed to him on August 24 and September 24, 1990. The jury believed Dye and convicted Manning, and the judge later sentenced him to death. Three months after Manning's trial, Dye's sentence was cut by more than half, other charges against him were dropped, and he was placed in the federal witness protection program. In 1998, Manning's case was reversed and remanded for a new trial due to the improper admission of certain testimony, and in January 2000 the murder charge against him was dropped altogether.[1] Manning filed this lawsuit in January 2002.

Manning makes a *Bivens* claim against Miller and Buchan for deprivation of his constitutional rights; a state law malicious prosecution claim against Miller, Buchan, and Dye; a Federal Tort Claims Act claim against the United States based on the conduct of Miller and Buchan; a claim under 42 U.S.C. §1983 against Rabbit and the City of Chicago for deprivation of

---

[1] Though not discussed in Manning's complaint, other evidence besides Dye's testimony was offered by the prosecution. A man named Tyrakowski who had frequently sold wholesale quantities of cocaine to Pellegrino testified that on the day Pellegrino was last seen alive, he gave Pellegrino money to buy cocaine from Manning, and Pellegrino left for the meeting uncharacteristically packing a gun. *See People v. Manning,* 182 Ill. 2d 193, 199, 695 N.E.2d 423, 426 (1998). Pellegrino's widow testified that the last time she saw her husband, he told her that if he turned up dead, she should go to the FBI and report that Manning had killed him. *Id.* at 215, 695 N.E.2d at 433. And in addition to testifying about the phony confessions, Dye reported that Manning had asked him to provide him with an alibi for a case pending in another jurisdiction, and in return Manning agreed to have the main witness in Dye's own case killed. *Id.* at 201, 695 N.E.2d at 427. Manning's conviction was reversed on the grounds that the testimony of Pellegrino's wife and Dye's testimony about these other matters was improperly admitted. *Id.* at 218, 695 N.E.2d at 434.

3

constitutional rights; and a §1983 conspiracy claim against Rabbit, Buchan, Miller, and the City of Chicago. Buchan and Miller have moved for summary judgment, contending that the claims against them are barred by the doctrines of absolute or qualified immunity.

Buchan and Miller's motion relies on a version of the facts, supported by their own affidavits, that varies in a number of critical respects from the allegations of Manning's complaint. The motion was filed before the parties had completed discovery, in particular before Manning had taken any depositions. For this reason, Manning moved pursuant to Federal Rule of Civil Procedure 56(f) to delay consideration of defendants' motion pending the completion of discovery. That request was appropriate; if the defendants want to have the Court consider on their immunity defenses based on their own (and as yet unexamined) version of the events, simple fairness entitles Manning to take discovery before requiring him to respond. *See, e.g., Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir. 1996) ("Summary judgment . . . should not be granted until the party opposing the motion has had an adequate opportunity for discovery." (citing *Dean v. Barber*, 951 F.2d 1210, 1213-14 (11th Cir. 1992)); *see also id.* at 1452.

This ruling does not entirely dispose of Buchan and Miller's motion. In their reply brief, they argue for dismissal based on what they consider to be Manning's characterization of the claims made in his complaint. The Court will therefore proceed to address the motion on that basis.

In support of their defense of absolute immunity, Buchan and Miller say that Manning's claims against them are premised on an allegation that they conspired to suborn perjury. *Briscoe v. LaHue*, 460 U.S. 325, 332 (1983), holds that a law enforcement officer enjoys absolute immunity for a claim based on the officer's perjury at a criminal trial; the decision recognizes

4

that absolute immunity likewise applies to non-law enforcement witnesses. *Id.* at 329-34. In *House v. Belford,* 956 F.2d 711, 720 (7th Cir. 1992), the Seventh Circuit extended *Briscoe* to claims of alleged conspiracy to commit perjury.[2] In *House,* the plaintiff was convicted of sexual assault, but several years later the victim recanted, saying that she had told the prosecutor before trial that she had falsely inculpated the plaintiff but was told she would be prosecuted for perjury if she testified inconsistently with her inculpatory statement. The state court refused to vacate the plaintiff's conviction after a post-conviction hearing at which the trial prosecutor testified that the victim had been a willing witness and that he had not threatened her as she claimed. The plaintiff next filed suit under §1983 against his post-conviction attorney, the post-conviction prosecutor, and the trial prosecutor who had testified at the hearing. He claimed that the trial prosecutor had testified falsely and had conspired with the post-conviction prosecutor to present the false testimony. The Seventh Circuit held that the prosecutor was entitled to absolute immunity under *Briscoe* for his testimony and that House could not avoid the immunity defense by casting his claim as one for conspiracy. It characterized this as "a distinction without a difference" and stated that "[a] person may not be prosecuted for conspiring to commit an act that he may perform with impunity." *Id.* at 720. *See also Buckley v. Fitzsimmons,* 952 F.2d 965, 966 (7th Cir. 1992) (according expert witnesses who testified at trial absolute immunity for pretrial activities including preparation to testify, stating that *Briscoe* would be "hollow" if witnesses could be sued for "preparing to deliver ... testimony"), *rev'd on other grounds,* 509 U.S. 259 (1993).

---

[2] Nearly every other Circuit has agreed. *See Mowbray v. Cameron County,* 274 F.3d 269, 277 n.2 (5th Cir. 2001)(citing cases). *But see San Filippo v. U.S. Trust Co.,* 737 F.2d 246, 254-55 (2d Cir. 1984).

5

*House* does not bar Manning's claim. Manning premises his claim not on a conspiracy to commit perjury but rather on a deprivation of his due process rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. Specifically, he contends that law enforcement officers Buchan and Miller coached Dye to concoct a series of falsehoods that were presented to prosecutors to justify the prosecution of Manning, told the prosecutors certain falsehoods of their own, and withheld from the prosecutors – and thus from Manning – their knowledge of the falsity of Dye's account. As a result, he alleges, he was deprived of a fair trial because he was left to his own devices to try to refute Dye's story, without the exculpatory and impeaching evidence that the law enforcement defendants had withheld. The fact that the defendants' efforts ultimately resulted in perjured testimony by Dye does not permit them to pigeon-hole Manning's claims as testimony-based and thus barred by *House*. Rather, his claims are specifically authorized by two Seventh Circuit decisions, one recent and one not so recent. In *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001), the court held that police officers who had withheld exculpatory evidence from prosecutors and the person they were prosecuting could be held liable under §1983 for depriving the defendant of his right to a fair trial in violation of *Brady*, even though §1983 did not permit the federal-law equivalent of a state-law malicious prosecution claim. *Id.* at 751-52. In support of this conclusion the court relied on its earlier decision in *Jones v. City of Chicago*, 856 F.2d 985 (7th Cir. 1988), a case involving police officers' concealment from prosecutors and the accused of evidence that would have shown that a victim who was claimed to have identified the accused in fact had not done so.

Buchan and Miller argue that Manning's characterization of their alleged wrongs as withholding of exculpatory evidence is simply a ruse to avoid *Briscoe*. They say that most if not

6

all cases involving perjury by the police or that the police conspired to present could be characterized in this way and that to allow this would swallow up the doctrine of witness immunity. The short answer is that defendants' argument is based on far too narrow a reading of Manning's complaint. Because the Court has determined that it should not address defendants' prematurely-filed motion for summary judgment, we are dealing with what is in effect a motion to dismiss. Accordingly, the Court is required to read the complaint liberally, in the light most favorable to the plaintiff, drawing reasonable inferences in his favor. *See, e.g., Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001). Manning's complaint is fairly read as alleging that the defendants withheld from prosecutors (and thus from Manning at his criminal trial) that they knew Dye was lying. This is a *Brady* claim in its purest form, and one that *Newsome* and *Jones* permit Manning to make. As we have indicated, the fact that Dye ultimately testified does not serve to immunize defendants for their conduct; what Manning alleges is that defendants' efforts allowed Dye's testimony to go unchallenged, which is far more than a mere claim of conspiracy to commit perjury. At this juncture we need not resolve defendants' arguments regarding the interplay of *Manning/Jones* and *Briscoe*, for those arguments do not defeat Manning's claim in light of the broad reading the Court must give it at this stage of the case.

Defendants likewise are not entitled to dismissal based on qualified immunity. The doctrine of qualified immunity protects government officials performing discretionary functions from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The threshold inquiry is whether the plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, then the

7

second question is whether the right was clearly established at the time of the alleged violation. *Id.* The Court has already held that Manning's allegations, construed in the light most favorable to him, make out a cognizable claim for violation of his constitutional rights. And in *Newsome*, the Seventh Circuit flatly rejected the defendants' contention that this constitutional right was not clearly established as of a date several years earlier than the events underlying Manning's claim. The court held that the proposition that the police could not withhold exculpatory information from prosecutors has been clearly established since at least *Jones* (decided in 1988), and probably longer. *Newsome*, 256 F.3d at 747, 752-53.

It remains to be determined what happens next. The Seventh Circuit, though noting the difficulty of addressing immunity issues at the pleading stage, *see Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000); *id.* at 775 (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground of dismissal."), has continued to reaffirm the general rule that immunity issues should be decided at the earliest possible stage. *Id.* at 765 n.3 (citing *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). Unfortunately the specific mechanisms that the court in *Jacobs* counseled – requiring a reply to the defendant's answer or a more definite statement of the plaintiff's claim, *see id.* – would not advance the ball in this case, as it is clear that Manning is making, at least in part, a claim that (liberally read) is not subject to an immunity defense even were the Court to accept defendants' *Briscoe* argument. Thus further examination of the immunity defenses will have to await summary judgment following a fair opportunity for plaintiff to complete discovery. The Court disagrees with defendants' argument that discovery

would be futile on the grounds that neither defendant, having sworn an affidavit to the contrary, can be expected to admit that he did what Manning claims. *See* Dfdt. Reply Mem. at 3. Even if that were so, Manning is entitled to seek out other evidence that will support his claim, whether directly or circumstantially. But at this stage of the game, the Court will require him to go about this expeditiously.

## Conclusion

For the foregoing reasons, the Court denies defendants' motion for summary judgment [docket items 18-1, 19-1]. Plaintiff's motion to stay the motion for summary judgment [item 23-1] is denied as moot. The United States' motions to substitute defendant [items 17-1, 20-1] are denied as moot in light of plaintiff's dismissal and refiling of his FTCA claim. Defendants Buchan and Miller are directed to answer plaintiffs' amended complaint within seven days of this order. The case remains set for a status hearing on January 31, 2003 at 9:30 a.m., at which time the Court will set a final discovery cutoff date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: January 17, 2003