IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

STEVEN MANNING,                    )
                                   )
            Plaintiff,             )
                                   )        Judge Kennelly
      v.                           )
                                   )        02 C 0372
THOMAS DYE, et al.,                )
                                   )
            Defendants,            )

**DOCKETED**

**MAY 0 3 2004**

**FILED**

APR 2 9 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## NOTICE OF FILING

TO:

Thomas Dye                          Eileen Rosen & Stacy Benjamin
#1184984                            Assistant Corporation Counsel
P.O. Box 122952                     30 N. LaSalle St., Suite 1400
San Diego, CA 92112                 Chicago, IL 60602

Jonathan C. Haile
Assistant U.S. Attorney
219 South Dearborn
Suite 1400
Chicago, IL 60604


      Please take notice that on April 29, 2004, I filed with
the District Court the attached SECOND AMENDED COMPLAINT.



LOEVY & LOEVY
312 N. May, Ste. 100
Chicago, IL 60607



## CERTIFICATE OF SERVICE

      I, Jon Rosenblatt, an attorney, certify that on April
29, 2004, I sent by fax a copy of the attached Notice and Filing
to the above-named counsel of record.

75

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

STEVEN MANNING,                        )
                                       )
            Plaintiff,                 )
                                       )      02 C 0372
        v.                             )
                                       )      Judge Kennelly
ROBERT BUCHAN, GARY MILLER, JOHN       )
O'ROURKE, TOMMY DYE, LOUIS RABBIT,     )
ROBERT QUID, CITY OF CHICAGO,          )
VILLAGE OF BUFFALO GROVE, and the      )
UNITED STATES OF AMERICA,              )
                                       )
            Defendants,                )

**DOCKETED**

**MAY 0 3 2004**

**FILED**

APR 29 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## SECOND AMENDED COMPLAINT

NOW COMES Plaintiff, STEVEN MANNING, by his attorneys, LOEVY & LOEVY, and for his Complaint against Defendants, FEDERAL BUREAU OF INVESTIGATION ("FBI") AGENT ROBERT BUCHAN, FBI AGENT GARY MILLER, FBI AGENT JOHN "JACK" O'ROURKE, THOMAS DYE, CHICAGO POLICE OFFICER LOUIS RABBIT, BUFFALO GROVE POLICE SERGEANT ROBERT QUID, VILLAGE OF BUFFALO GROVE, and the UNITED STATES OF AMERICA, states as follows:

### Introduction

1.    This action seeks redress for the Defendants' violations of the United States Constitution and the laws of the State of Illinois.

2.    Defendants, acting in concert, knowingly and intentionally manufactured a false murder case against Plaintiff Manning by, *inter alia*, fabricating false evidence of a supposed oral confession by Manning, using the falsified evidence to obtain a prosecution against Manning, and ultimately having Dye perjure himself at Manning's trial.

3.    Other than the fabricated statements that Manning
had allegedly "confessed", no direct evidence was ever developed
or introduced tying Manning to the murder.  Nevertheless, Manning
was convicted of the murder and sentenced to die by lethal
injection based on the falsified case against him.

4.    Manning spent the next six years under the cloud
of this death sentence, attempting to have this unjust conviction
overturned to save his life.

5.    Finally, Manning prevailed in post-conviction
proceedings, becoming the thirteenth Illinois prisoner to be
freed from Illinois' death row due to improprieties in the
conviction.  As a result, Governor Ryan imposed a moratorium on
all executions in the State of Illinois which remains in effect
to this day.

6.    Manning's conviction has been vacated in a manner
indicative of his innocence on the murder charges.  Manning now
brings this case seeking redress for his economic, physical and
mental injuries suffered as a result of this malicious scheme and
to reform the practices that have allowed and continue to allow
this to happen to innocent Illinois citizens.

### Jurisdiction and Venue

7.    This Court has jurisdiction of the action pursuant
to 28 U.S.C. §§ 1331 and 1367.

8.    Venue is proper under 28 U.S.C. § 1391.  On
information and belief, all Defendants reside in this judicial
district, and events giving rise to the claims asserted herein
occurred within district.

2

## Parties

9.   Plaintiff, Steven Manning, is an adult citizen of the State of Illinois.

10.   On information and belief, Defendant, Thomas Dye, is a citizen of the State of Illinois, currently imprisoned in the State of Colorado.   Dye has a long history of criminal activity involving dishonesty, perjuring himself in court, obstructing justice by lying to prosecutors, and is known by a number of alias including: William Zonka, Thomas O'Neil, Sean P. Kelly, Tommy Welch.

11.   Defendants Robert Buchan, Gary Miller, and Jack O'Rourke are citizens of the State of Illinois.   At all times relevant hereto, Buchan, Miller, and O'Rourke were agents of the FBI and members of Squad 9 of the FBI's Chicago office.   In this capacity, Defendants Buchan, Miller, and O'Rourke were authorized and empowered by law to execute searches, to seize evidence, and/or to make arrests for violations of federal law.   Buchan, Miller, and O'Rourke took the acts alleged herein within the scope of their employment and agency.

12.   Defendant Louis Rabbit is an adult resident of Cook County, Illinois.   At all times relevant hereto, Rabbit has been employed by the City of Chicago as a Detective.   Rabbit took the acts alleged herein within the scope of his employment and agency.   Defendant, City of Chicago, is a city of the State of Illinois, capable of suing and being sued.

3

13. At all times relevant hereto, William Gamboney and Patrick Quinn were employees of Cook County, serving as prosecuting State's Attorneys.

14. Defendant Bob Quid is an adult resident of Cook County, Illinois. At all times relevant hereto, Quid has been employed by the Village of Buffalo Grove as a police officer. Quid took the acts alleged herein within the scope of his employment and agency. Defendant, Village of Buffalo Grove, is a city of the State of Illinois, capable of suing and being sued.

15. Defendant United States of America, is a body politic, capable of suing and being sued. The United States has waived its sovereign immunity on the claims presented herein.

### Basis Of Plaintiff's Claims

16. Plaintiff Manning is a former Chicago Police Officer who worked for a period of time as an informant for certain members of "Squad 9" of the FBI's Chicago Office. Manning terminated that relationship in November of 1986.

17. In retaliation, Squad 9 repeatedly targeted Manning for harassing criminal investigations by, *inter alia*, attempting to frame Manning as the perpetrator of sundry unsolved crimes, all without any evidence or basis for believing that Manning actually committed them.

18. On information and belief, Squad 9 agents sifted through files on unsolved crimes across the United States in order to find ones in which the circumstances would allow them to manufacture a case against Manning. On information and belief,

4

Squad 9 agents also offered to drop charges against various criminals if they could implicate Manning in any other crimes.

19. Out of this process, Squad 9 agents identified and attempted to frame Manning on at least three such crimes: an August 1984 kidnaping of two drug-dealers in Kansas City, Missouri (the "Kidnaping"), the 1985 murder of Chuckie English, and the 1990 murder of James Pellegrino.

20. On or about June, 1990, Defendant Buchan traveled to Minnesota to interview Caroline Heldenbrand, a witness to the 1984 Kidnaping. Buchan had no reasonable basis to believe that Manning committed the Kidnaping nor to believe that there was a any Illinois tie sufficient to justify the FBI Chicago Office's conduct of the investigation. Indeed, at this time, the FBI had closed its investigation of the Kidnaping and the case was being pursued, if at all, by Missouri state authorities.

21. During that interview, Buchan conducted a highly suggestive "photographic line-up" to induce the witness to identify Manning as the perpetrator of the 1984 Kidnaping.

22. In July of 1990, based solely on this fabricated identification evidence, Manning was arrested and placed in the Cook County Jail to await extradition to Missouri.

23. On or about August 15, 1990, having caused Manning to be detained at the Cook County Jail, Defendants Buchan and Miller arranged for Manning to be placed in the same cell as Defendant Dye, a willing jail house informant, for purposes of fabricating further evidence against Manning. Dye had received a 14-year sentence two months earlier on theft and weapons charges.

24. On information and belief, Buchan and Miller knew that Dye had a propensity to lie and defraud, had previously falsified information to state and federal authorities, had previously perjured himself, and was otherwise wholly unreliable. On information and belief, Buchan and Miller selected Dye, *inter alia*, because of his skills and proficiency for lying.

25. On information and belief, prior to the date of any supposed confession, Buchan and Miller expressly informed Dye that they were trying to tie Manning to the Kidnapping and the murders of James Pellegrino and Chuckie English and provided him details about those crimes.

26. Pursuant to standard FBI practice, Buchan and Miller debriefed Dye after his conversations with Manning and created "302" forms to memorialize Dye's statements to them about what Manning told him. On August 24, 1990, Miller debriefed Dye by telephone regarding his conversations with Manning. That 302 states that Dye told Miller that Manning stated he had committed the 1984 Kidnaping and two murders.

27. On information and belief, FBI procedure required that Miller include this information in the 302 report if Dye had actually stated that Manning confessed to murdering James Pellegrino. On information and belief, Dye did not actually report to Miller on August 24, 1990 that Manning had confessed the to the murder of Pellegrino.

28. Buchan and Miller obtained permission to place a tape recorder interception device on Dye to record his

6

conversations with Manning.  On August 24, 1990 Dye proceeded to engage Manning in such recorded conversations.

29.  On August 25, 1990, Miller was debriefed by Dye regarding his conversation with Manning on August 24, 1990.  The 302 states that Dye informed Miller that Manning again confessed to the 1984 Kidnaping and that he further confessed to the murder of Chuckie English.

30.  There was also a tape of the August 24, 1990 conversation where Manning allegedly confessed to Dye.  On information and belief, it was not transcribed until not less than at least one month later.  Nowhere on the tape or the transcript does Manning confess to the 1984 Kidnaping or the murder of Chuckie English.

31.  Dye, and/or Miller and Buchan fabricated these confessions.  Unbeknownst to Dye, Miller and Buchan, at the time they created this 302, Manning could not have committed the English murder to which he had supposedly "confessed" to Dye because Manning was in jail on unrelated charges at the time it occurred.

32.  A 302 report created by Miller regarding Dye's conversation with Manning on September 24, 1990 states that Manning again confessed at that time to the 1984 Kidnaping.  A second 302 report states that the recording device "malfunctioned" on that date failing to record the alleged "confession".

33.  In December of 1990, a federal grand jury was convened against Manning for the murder of James Pellegrino.

7

34.  Dye testified at the grand jury that Manning confessed to the murder of James Pellegrino on August 24, 1990. With the coaching of Miller and Buchan, Dye testified that the reason why the supposed confession does not appear on the tape of the August 24, 1990 conversation is because Manning pushed him on the floor as he made the confession, causing two seconds of background noise that concealed Manning's statement.

35.  Nothing stated in the conversation immediately preceding or following the two second gap is at all congruous with a murder confession.  In fact, there is no possible good faith interpretation of the tape which supports a confession.

36.  On information and belief, no explanation was provided as to why the 302 did not specifically note Pellegrino's name as that of the murder victim.

37.  Based on the flimsy evidence, the federal grand jury refused to return an indictment against Manning.

38.  In January of 1991, Miller and Buchan caused this same evidence to be transferred to the Illinois State's Attorney's office in Chicago in order to bring state murder charges against Manning.

39.  On December 13, 1991 Dye plead guilty to the residential burglary and firearms charges and was sentenced to fourteen years in Illinois prison.

40.  In February of 1992, Quinn and/or Gamboney convened a Cook County grand jury against Manning for the murder of James Pellegrino.

41. Dye was not presented as a witness. Instead, Defendant Louis Rabbit, a Chicago Police Detective, was called to testify about what he had learned from Dye, Miller and Buchan.

42. Rabbit testified that the Chicago Police Department had evidence from the FBI, including tape recordings, and that he had been told that these showed that Manning told an informant that he had murdered James Pellegrino.

43. Based on this evidence, the Cook County grand jury returned an indictment against Pellegrino.

44. On information and belief, Detective Rabbit knew that Dye, Buchan and Miller had fabricated the evidence about Manning confessing to the Pellegrino murder. Rabbit knew that this was exculpatory evidence which Manning had a right to have disclosed. Nevertheless, to prevent such disclosure, Rabbit intentionally failed to inform Assistant State's Attorney's Quinn and Gamboney of this evidence.

45. In October of 1993, Manning was tried for the murder of James Pellegrino. At that trial Dye repeated his testimony that Manning had confessed to the Pellegrino murder on August 24, 1990 during the two second gap in the tape. Dye further testified that Manning confessed to the Pellegrino murder a second time on September 24, 1990. Dye testified to these facts falsely and at the coaching of Miller and Buchan. Manning was convicted based on this evidence.

46. No direct evidence of Manning's guilt was offered at trial other than the falsified confessions. Without this

9

falsified evidence Manning could not have been prosecuted or convicted of the Pellegrino murder.

47. Three months after giving the false testimony at the trial, Dye's received a reduction of his 14 year sentence to six years, he and his girlfriend were placed in the federal Witness Protection Program, and other criminal charges against him were dropped.

48. On information and belief Miller, Buchan, Quinn and/or Gamboney had previously indicated to Dye that he would receive such rewards in exchange for his favorable testimony against Manning, and Quinn and/or Gamboney were aware of this. This was done as a reward for his services to Miller and Buchan and his testimony against Manning at trial.

49. Quinn and/or Gamboney knew that the fact of this deal for Dye's testimony was exculpatory evidence, which should have been turned over to Manning's defense and which would have had a material impact on the trial, *inter alia*, because Dye's testimony was the only discreet evidence against Manning.

50. Based on Dye's testimony, Manning was sentenced to death by lethal injection for the murder of James Pellegrino. Manning was imprisoned on death row. He lived in constant fear and suffered physical and mental injuries as a result.

51. Manning made post-conviction challenges to the conviction and sentence and in 1998 the Illinois Supreme Court reversed and remanded his case.

52. On July 22, 1999 Manning filed a Motion to Dismiss the Indictment Based On Governmental Misconduct, which contained

many of the allegations set forth herein. On January 18, 2000, Manning finally succeeded in having the conviction dropped in a manner indicative of his innocence.

53. Pursuant to 28 C.F.R. § 14, on January 16, 2002, Plaintiff filed an administrative claim with the Department of Justice. On July 18, 2002, Plaintiff received notice that his claim had been rejected and was given authority to file suit on the relevant claims with a Federal District Court.

## COUNT I - Deprivation of Constitutional Rights
### (Illinois Murder)

54. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

55. Based on all of the above, Defendants Miller and Buchan deprived Manning of his rights under the United States Constitution in a manner which is actionable under federal law.

56. As a direct and proximate result, Manning has suffered actual and special damages including, *inter alia*, physical injury, extreme emotional suffering and economic damages.

57. Defendants Miller and Buchan are liable therefor in an amount to be proven at trial, together with punitive damages, as well as costs and attorneys fees incurred in bringing this action.

## COUNT II - State Law Malicious Prosecution
### (Illinois Murder)

58. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

11

59. Based on all of the above, Defendants Miller, Buchan and Dye acting individually and in concert, improperly subjected Manning to judicial proceedings for which there was no probable cause. These actions were undertaken maliciously, resulting in injury. All proceedings were terminated in Manning's favor in a manner indicative of innocence.

60. As a direct and proximate result of the above-described conduct Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendants Dye, Miller and Buchan are liable for all these damages, jointly and severally, together with appropriate punitive damages in an amount to be determined at trial and pre-judgment and post-judgment interest.

## COUNT III - Federal Tort Claims Act
### (Illinois Murder)

61. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

62. Based on all of the above, Defendants Miller and Buchan, acting individually and in concert, improperly subjected Manning to judicial proceedings for which there was no probable cause and under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of Illinois. These actions were undertaken maliciously, resulting in injury. All proceedings were terminated in Manning's favor in a manner indicative of innocence.

63. As a direct and proximate result of the above-described conduct Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendant United States of American is liable for all these damages in an amount to be proven at trial, together with costs, attorneys fees and pre-judgment and post-judgment interest.

## COUNT IV - 42 U.S.C. § 1983

64. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

65. By all of the above, Defendant Rabbit, acting under color of law and within the scope of his employment, deprived Plaintiff Manning of his rights under the United States Constitution.

66. As a direct and proximate result of the above-described conduct, Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendant Rabbit is liable for all these damages, together with appropriate punitive damages in an amount to be determined at trial, an award of costs and attorneys fees, and pre-judgment and post-judgment interest.

67. Defendant City of Chicago is liable to Manning pursuant to Illinois law for all resulting actual damages, together with costs and attorneys fees.

## COUNT V - 42 U.S.C. § 1983: Conspiracy

68. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

13

69. By all of the allegations in this Complaint, involving both the Illinois and Missouri crimes, Defendants Rabbit and Quid, and Buchan, Miller and O'Rourke, all acting within the scope of their respective employments and under color of law, conspired to and did deprive Plaintiff Manning of his rights under the United States Constitution and federal law.

70. As a direct and proximate result of the above-described conduct, Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendants Rabbit, Quid, Buchan, Miller, and O'Rourke, are liable for all these damages, together with appropriate punitive damages in an amount to be determined at trial, an award of costs and attorneys fees, and pre-judgment and post-judgment interest.

71. Defendant City of Chicago and Village of Buffalo Grove are liable to Manning for all resulting actual damages, together with costs and attorneys fees, pursuant to Illinois law.

## Count VI - 42 U.S.C. § 1983 Malicious Prosecution

### (Illinois Murder)

72. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

73. Pleading in the alternative, to the extent the charges against Manning on the Illinois murder were not resolved in a manner sufficiently indicative of innocence, Manning has no state law remedy available to him for Defendants Buchan, Miller, and Rabbitt's deliberate and malicious efforts to prosecute Manning for a crime which they knew Manning did not commit.

14

74. Specifically, Defendants deliberately and maliciously framed Manning by fabricating false evidence and withholding exculpatory evidence in a successful attempt to mislead the prosecutors into prosecuting and to successfully obtain Manning's conviction and death sentence for a crime which the Defendants knew he did not commit.

75. The above-described malicious prosecution violated Manning's constitutional rights in a way that state law, pleading in the alternative, provides no remedy.

76. As a result of the above-described wrongful infringement of Plaintiff's rights, he has suffered financial and other damages, including but not limited to substantial mental stress and anguish.

## COUNT VII - Deprivation of Constitutional Rights
## (Missouri Kidnapping)

77. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

78. Based on all of the above, Defendants Buchan, Miller, O'Rourke, Dye, and Quid all deprived Manning of his rights under the United States Constitution in a manner which is actionable under federal law.

79. Specifically, some or all of Defendants Buchan, Miller, O'Rourke, Dye, and Quid took the following actions:

A. Paid a witness, Anthony Mammolito, thousands of dollars in cash to provide adverse testimony to Manning and then failed to disclose this fact to either the prosecution or the defense (a fact which Manning only discovered many years

15

later during post-conviction discovery). Defendants also withheld in discovery the fact that they had provided Mammolito with details about the crime which he was later able to falsely attribute to Manning.

      B.    Travelled out of their jurisdiction to Kansas City, Missouri, to "investigate" a six-year old kidnapping of a drug dealer, and then conducted the above-described tainted "photo line-up" in a suggestive manner to somehow persuade a witness who had gotten a few-seconds glimpse of a kidnapper wearing glasses and a baseball hat roughly six years earlier that the kidnapper she saw was actually Manning, when in fact Manning had nothing to do with this kidnapping.

      C.    Violated Manning's right to counsel by directing Tommy Dye (and another witness) to surreptitiously attempt to extract incriminating information from Manning notwithstanding that Manning was already represented by counsel at the time.

      D.    Withheld from the prosecution and the defense other material exculpatory information not known to Manning previously, including but not limited to the full extent of the consideration provided to Dye to falsely implicate Manning, as well as the fact that the Defendants had equipped Dye with the facts surrounding the Missouri Kidnapping before sending him into Manning's cell to attempt to get a confession, such that Dye was able to falsely attribute details of the kidnapping to Manning's confession when in fact he had previously received those details from Defendants.

16

80. As a proximate result, Manning has suffered actual and special damages including, *inter alia*, physical injury, extreme emotional suffering and economic damages.

81. Defendants Buchan, Miller, O'Rourke, and Quid are all liable therefor in an amount to be proven at trial, together with punitive damages, as well as costs and attorneys fees incurred in bringing this action.

### COUNT VIII - State Law Malicious Prosecution
### (Missouri Kidnapping)

82. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

83. Based on all of the above, Defendants Miller, Buchan and Dye acting individually and in concert, improperly subjected Manning to judicial proceedings for which there was no probable cause. These actions were undertaken maliciously, resulting in injury. All proceedings were terminated in Manning's favor in a manner indicative of innocence.

84. As a direct and proximate result of the above-described conduct Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendants Dye, Miller and Buchan are liable for all these damages, jointly and severally, together with appropriate punitive damages in an amount to be determined at trial and pre-judgment and post-judgment interest.

17

## COUNT IX - Federal Tort Claims Act
### (Missouri Kidnapping)

85.   Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

86.   Based on all of the above, Defendants Miller and Buchan, acting individually and in concert, improperly subjected Manning to judicial proceedings for which there was no probable cause and under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of Illinois.  These actions were undertaken maliciously, resulting in injury.  All proceedings were terminated in Manning's favor in a manner indicative of innocence.

87.   As a direct and proximate result of the above-described conduct Manning has suffered actual and special damages including, *inter alia*, extreme emotional distress. Defendant United States of American is liable for all these damages in an amount to be proven at trial, together with costs, attorneys fees and pre-judgment and post-judgment interest.

## Count X - 42 U.S.C. § 1983 Malicious Prosecution
### (Missouri Kidnapping)

88.   Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

89.   Pleading in the alternative, to the extent the charges against Manning on the Illinois murder were not resolved in a manner sufficiently indicative of innocence, Manning has no state law remedy available to him for Defendants Buchan and

18

Miller's deliberate and malicious efforts to prosecute Manning
for a crime which they knew Manning did not commit.

90. Specifically, Defendants deliberately and
maliciously framed Manning by fabricating false evidence and
withholding exculpatory evidence in a successful attempt to
mislead the prosecutors into prosecuting and to successfully
obtain Manning's conviction and death sentence for a crime which
the Defendants knew he did not commit.

91. The above-described malicious prosecution violated
Manning's constitutional rights in a way that state law, pleading
in the alternative, provides no remedy.

92. As a result of the above-described wrongful
infringement of Plaintiff's rights, he has suffered financial and
other damages, including but not limited to substantial mental
stress and anguish.

### Count XI - RICO

93. Plaintiff Manning incorporates all of the
paragraphs of this Complaint as if fully set forth herein.

94. Over the course of years, each of the individual
Defendants have, and continue to, conduct racketeering activity
through their positions as agents of the Federal Bureau of
Investigation and other law enforcement agencies in a manner that
has caused harm to Plaintiff's business and property.

95. Specifically, these Defendants have associated
with an enterprise to conduct or participate, directly or
indirectly, in the conduct of such enterprise's affairs through a

pattern of racketeering activity. Each individual Defendant played some part in directing those affairs.

96. The racketeering activity referred to in the preceding paragraphs satisfies the conduct requirement in that it includes the provision of false documents and the false testimony of others to the various State's Attorneys' Offices, who then used this information to prosecute Plaintiff. In so doing, Defendants directed the criminal investigation against Plaintiff in their official positions with the Federal Bureau of Investigation, the Chicago Police Department, and the Buffalo Grove Police Department.

97. The FBI, the Chicago Police Department, and the Buffalo Grove Police Departments are enterprises, as defined under 18 U.S.C. § 1961, which is engaged in and affects interstate commerce.

98. The racketeering activity referred to in the preceding paragraphs includes, at a minimum, at least two predicate acts with the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.

99. The predicate acts referred to in the preceding paragraphs include, among others, the Defendants' actions in framing Manning for the Missouri kidnapping, the English murder, and the Pellegrino murder in the manner described more fully above. This includes but is not limited to using their official positions to obstruct state and local criminal investigations,

influence a grand jury, commit perjury, tamper with witnesses (including the inducement of witnesses to give false statements and commit perjury), and otherwise cover up their misconduct in working to obstruct justice and procure convictions of Manning for crimes he did not commit.

100. RICO's continuity element is satisfied here in the manner described above in that Defendants engaged in a series of related attempts to frame Manning over a substantial period of time (close-ended continuity) and because the Defendants' misconduct, by its nature, projects into the future with a threat of repetition (open-ended continuity).

101. The individual Defendants have engaged in a long-standing pattern of racketeering activity that continues to this day. The acts comprising this racketeering activity are related to each other and pose a threat of continued criminal activity, as demonstrated, *inter alia,* by the repeated nature of the attempts to incriminate Manning falsely, and by the law enforcement authorities' continuing failure to cooperate with federal officials seeking to bring to justice the person(s) actually responsible for the crimes with which Plaintiff was wrongfully charged.

102. As a result of Defendants' conduct, Plaintiff has suffered injuries to his business and/or property. Specifically, Plaintiff was forced to hire an attorney and to pay legal fees, suffered a loss of business reputation and damage to his then-existing business opportunities, lost bond money, as well as

interest and fees on that bond money, all as a direct and proximate result of Defendants' racketeering activity.

103. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of others.

104. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employers are liable for their actions.

### Count XII - RICO Conspiracy

105. Plaintiff Manning incorporates all of the paragraphs of this Complaint as if fully set forth herein.

106. Each of the individual Defendants in this action agreed, impliedly or directly, to participate in framing Plaintiff for crimes he did not commit. These Defendants agreed, impliedly or directly, that some of them would commit a pattern of racketeering activity in order to harm Plaintiff, and then took actions in furtherance of that common objective.

107. As a result of Defendants' conduct, Plaintiff has suffered injuries to his business and/or property. Specifically, Plaintiff has had to pay legal fees, suffered a loss of business reputation, and lost bond money, as well as interest and fees on that bond money, as a direct and proximate result of Defendants' racketeering activity.

108. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with

malice, willfulness, and reckless indifference to the rights of others.

109. The misconduct described in this Count was undertaken by Defendants within the scope of their employment and under color of law such that their employers are liable for their actions.

### COUNT XIII -- State Law Claim
### Intentional Infliction of Emotional Distress

110. Plaintiff realleges each of the preceding Paragraphs of this Complaint as if fully stated herein.

111. The acts and conduct of the Defendants in connection with the Missouri kidnapping as set forth above were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Mr. Manning.

112. Said actions and conduct did directly and proximately cause severe emotional distress to Mr. Manning and thereby constituted intentional infliction of emotional distress.

113. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

114. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

WHEREFORE, Plaintiff, STEVEN MANNING, respectfully request that the Court enter judgment in this favor and against Defendants THOMAS DYE, FBI AGENT ROBERT BUCHAN, FBI AGENT GARY MILLER, FBI AGENT JOHN "JACK" O'ROURKE, the UNITED STATES OF AMERICA, CHICAGO POLICE DETECTIVE LOUIS RABBIT, the CITY OF CHICAGO, BUFFALO GROVE SGT. ROBERT QUID, and the VILLAGE OF BUFFALO GROVE, awarding compensatory damages against all of the defendants, and penalties and punitive damages against the individual defendants, as well as costs, attorneys fees against all Defendants and any other relief this Court deems just and appropriate under the circumstances.

### Jury Demand

Plaintiff demands trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED,

Attorneys for Plaintiff

Arthur Loevy
Jon Loevy
Michael Kanovitz
Jon Rosenblatt
LOEVY & LOEVY
312 North May Street
Suite 100
Chicago, IL 60607
(312) 243-5900

24